# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER DEAN MCCAMANT, | § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:20-CV-00212-CAN |
| v. | § § | |
| COMMISSIONER, SSA, | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this appeal pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits and supplemental security income. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court finds the Commissioner's decision is **AFFIRMED**.

## RELEVANT PROCEDURAL HISTORY AND MEDICAL EVIDENCE SUMMARY

On September 19, 2017, Christopher Dean McCamant ("Plaintiff") filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and under Title XVI of the Social Security Act [TR 20].[1] Plaintiff asserts an onset of disability date of August 1, 2017 [TR 20, 73]. Plaintiff was born on October 22, 1969, making him forty-seven (47) years of age at the time of alleged onset of disability and forty-nine (49) years of age at the time of the ALJ's decision [TR 17]. His age classification was defined at all relevant times as "younger person." *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). Plaintiff's application was initially

---

[1] Though Plaintiff's Brief states only that he applied for disability insurance benefits under Title II, the Court notes, and the Government's briefing reflects, that Plaintiff also filed for supplemental security income under Title XVI [TR 189-93].

denied by notice on January 11, 2018 [TR 111], and again upon reconsideration on April 12, 2018 [TR 126]. Plaintiff requested an administrative hearing ("Hearing") by an administrative law judge ("ALJ") [TR 131-32], which was held on April 15, 2019 [TR 49-63]. At Hearing, Plaintiff, and a vocational expert ("VE") presented testimony. Plaintiff was represented by counsel at Hearing [TR 49]. On May 9, 2019, the ALJ issued an unfavorable decision denying Plaintiff's applications [TR 17-34]. After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation [TR 17-34]. At step one, the ALJ found that Plaintiff meets the insured status requirements of the Act through December 31, 2021, and that Plaintiff had not engaged in substantial gainful activity since August 1, 2017 [TR 22]. At step two, the ALJ found that Plaintiff had the following severe impairments: rheumatoid arthritis and hypertension [TR 22]. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) [TR 24]. At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R §§ 404.1567(a) and 416.967(a) with the following limitations:

> [Plaintiff] has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, as well as stand and walk 2-hours out of an 8-hour workday and sit 6-hours out of an 8-hour workday. [Plaintiff] can stoop, bend, squat, kneel and crouch on an occasional basis. The claimant should not climb, use ropes, ladders, or scaffolds. [Plaintiff] must avoid extremes of heat and cold. He must also avoid vibration. The claimant requires a cane to get to and from the work zone.

[TR 24]. Continuing the step four analysis, the ALJ found that Plaintiff is unable to perform any of his past relevant work as an automotive mechanic or an air conditioning installer (20 C.F.R § 404.1565 and 416.965) [TR 28]. At step five, after considering Plaintiff's age, education, work

experience, and RFC, the ALJ found "there are jobs that exist in significant numbers in the national economy that the claimant can perform" including order clerk (DOT 209.567-014, sedentary, SVP 2; assembler (DOT 713.687-018), sedentary, SVP 2; and lens inserter (DOT 713.687-026), sedentary, SVP 2 [TR 29]. Based on this determination, the ALJ concluded that Plaintiff has not been under a disability from August 1, 2017, through the date of the ALJ's decision [TR 29].[2]

On May 9, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council [TR 187-88]. On January 15, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner [TR 6-11]. On March 13, 2020, Plaintiff filed the instant suit [Dkt. 1], and on September 8, 2020, the Administrative Record was received from the Social Security Administration [Dkt. 17]. On November 8, 2020, Plaintiff filed his Opening Brief [Dkt. 20], and on January 4, 2021, the Commissioner filed its Response in Support of the Commissioner's Decision [Dkt. 21].

*Relevant Medical Records*

Plaintiff argues, in part, on appeal that the record contains insufficient medical evidence for the ALJ to have made a disability determination; the Commissioner urges the record contains substantial evidence in support of the ALJ's determination. Considering these differing positions, the Court summarizes the relevant medical records.

---

[2] Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of the disability claim is not disabled. 20 C.F.R § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his or her impairment corresponds to a listed impairment in 20 C.F.R., Part 404 Subpart P, Appendix 1. 20 C.F.R § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he can perform his past work. 20 C.F.R § 404.1520(e). Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. 20 C.F.R § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability: then, at the last step, the burden ships to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

MEMORANDUM OPINION AND ORDER – Page 3

On May 2, 2017, Plaintiff presented to the hospital emergency room with progressively worsening joint pain in his knees, ankles, hip, and neck [TR 272-73]. The attending physician ordered an x-ray of Plaintiff's left knee, which revealed a moderate sized joint effusion [TR 275]. Plaintiff's record states "pain is due to [range of motion] & clears with walking" [TR 277]. Plaintiff reported pain in his knees and swelling in his lower extremities [TR 276-77]. A physical examination revealed Plaintiff was "hypertensive," but that his back and upper extremities were normal and his lower extremities were normal with mild swelling [TR 277]. Plaintiff was diagnosed with "polyarthralgia" and pain "without a known cause," with instructions to follow up with a primary care physician [TR 278, 280].

From May 4, 2017, through March 9, 2018, Plaintiff saw Dr. Rani Anbarasu as his primary care physician [TR 328, 344]. Dr. Anbarasu's examination revealed evidence of degenerative joint disease in Plaintiff's extremities [TR 345]. Plaintiff's joints exhibited "swelling and deformity with age related changes present" and Plaintiff—who wore a knee brace—had "limited [range of motion] of left knee" [TR 345]. Laboratory testing revealed rheumatoid arthritis [TR 347]. On May 10, 2017, Plaintiff returned to Dr. Anbarasu for a follow-up appointment. Dr. Anbarasu's examination revealed no changes to Plaintiff's extremities, but he exhibited degenerative joint disease and had joint swelling and deformity [TR 342-43]. Dr. Anbarasu diagnosed Plaintiff with "[r]heumatoid arthritis involving right wrist with positive rheumatoid factor" [TR 342]. On May 31, 2017, Dr. Anbarasu's reported these conditions were still present: "degenerative joint disease evident" and "joint swelling and deformity with age related changes present, limited [range of motion] of left knee" [TR 339]. Dr. Anbarasu added two diagnoses: essential hypertension and arthralgia, unspecified joint [TR 339]. On August 2, 2017, Plaintiff reported his "[j]oint pains [were] slowly getting worse and that he [was] unable to work" [TR 334]. Dr. Anbarasu made no

changes to plaintiff's diagnoses [TR 334-35]. Based on this physical examination and the lab results, which revealed a positive rheumatoid factor, Dr. Anbarasu reaffirmed Plaintiff's diagnoses: rheumatoid arthritis involving right wrist with positive rheumatoid factor, unspecified joint arthralgia, and essential hypertension [TR 332]. Plaintiff last saw Dr. Anbarasu on March 9, 2018. Plaintiff told Dr. Anbarasu that he has "increased pain in his joints" and is "currently, unable to work" [TR 328]. Dr. Anbarasu's objective findings, however, were unchanged from Plaintiff's previous examinations. On March 9, 2018, Dr. Anbarasu assessed rheumatoid arthritis in multiple sites and the right wrist with positive rheumatoid factor [TR 329]. These findings are consistent with Plaintiff's examinations and labs from previous visits, including the August 30, 2017 visit [TR 288-89, 331-32, 361], which showed positive rheumatoid factor including the right wrist. Plaintiff stopped seeing Dr. Anbarasu in March of 2018 "due to financial issues," and he has not engaged any other treatment providers [TR 260].

On October 10, 2017, Dr. Anbarasu completed two Residual Functional Capacity Questionnaires ("RFC") [TR 316-26]. Therein, Dr. Anbarasu indicated that Plaintiff could lift/carry up to ten pounds "frequently," eleven to twenty pounds "occasionally," twenty-one to fifty pounds "rarely," and fifty-one or more pounds "never" [TR 320]. Moreover, Dr. Anbarasu indicated that Plaintiff could never twist, stoop or bend, crouch, and climb ladders or stairs [TR 320]. Additionally, Dr. Anbarasu determined that Plaintiff's hands, fingers, and arms have limited functionality: during an eight-hour workday, Plaintiff could use his hands to grasp, turn, or twist objects 10% of the time; Plaintiff could use his fingers for fine manipulative tasks 20% of the time; and Plaintiff could raise his arms 10% of the time [TR 321]. Dr. Anbarasu indicated that Plaintiff can sit for no more than thirty minutes at a time and stand for no more than five minutes at a time [TR 319]. Accordingly, Dr. Anbarasu indicated that Plaintiff would need to "lie down" for an

unscheduled twenty-minute break every thirty to forty-five minutes [TR 320]. Dr. Anbarasu attested Plaintiff is likely to produce good and bad days [TR 321]. Consequently, Dr. Anbarasu determined that Plaintiff is "incapable of even 'low stress' jobs" and that his impairments are "reasonably consistent with the symptoms and functional limitations" Dr. Anbarasu outlined in the RFC questionnaire [TR 323].

On January 8, 2018, state agency medical examiner (SAMC) Dr. Linardos reviewed Plaintiff's medical records in connection with the initial agency determinations [TR 65-80]. Dr. Linardos found that Plaintiff had exertional limitations, including: occasionally lifting/carrying 20 pounds; frequently lifting/carrying ten pounds; and standing and/or walking six hours in an eight-hour workday [TR 68]. Dr. Linardos, however, determined that Plaintiff's had "unlimited" use of his upper extremities for push and pull [TR 68]. Dr. Linardos further found that Plaintiff had postural limitations, including: frequently balancing and stooping; occasionally climbing ramps and stairs, kneeling, crouching, and crawling; and never climbing ladders, ropes, and scaffolds [TR 69]. Dr. Linardos also determined that Plaintiff did not have any manipulative, visual, communicative, and environmental limitations [TR 69]. Dr. Linardos opined that Plaintiff's "statements about the intensity, persistence, and functionality limiting effects of the symptoms" were not substantiated by the "objective evidence alone" [TR 67]. Further, Dr. Linardos determined that Plaintiff's statements regarding his symptoms were "partially consistent" with the "total medical and non-medical evidence in file" [TR 68].

At the reconsideration level, on April 10, 2018, SAMC Dr. Santiago evaluated Plaintiff's medical records, including records from Plaintiff's March 9, 2018, appointment with Dr. Anbarasu [TR 84-103]. Dr. Santiago similarly found that plaintiff had exertional limitations, including: occasionally lifting/carrying 20 pounds; frequently lifting/carrying ten pounds; and standing

and/or walking six hours in an eight-hour workday [TR 89].  Dr. Santiago also determined that Plaintiff had "unlimited" use of his upper extremities for push and pull [TR 89].  Dr. Santiago, like Dr. Linardos, also found that Plaintiff had postural limitations, including: the ability to balance and stoop frequently; the ability to climb ramps and stairs, kneel, crouch, and crawl occasionally; and no ability to climb ladders, ropes, and scaffolds [TR 89-90].  Dr. Santiago further determined that Plaintiff did not have any manipulative, visual, communicative, or environmental limitations [TR 90].  Dr. Santiago also opined that Plaintiff's "statements about the intensity, persistence, and functionality limiting effects of the symptoms" were not substantiated by the "objective evidence alone" [TR 88].  And like Dr. Linardos, Dr. Santiago determined that Plaintiff's statements regarding his symptoms were "partially consistent" with the "total medical and non-medical evidence in file" [TR 68].

## STANDARD OF REVIEW

In an appeal under § 405(g), the Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994); 42 U.S.C. § 405(g).  A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett*, 67 F.3d at 564; *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).  It is more than a mere scintilla and less than a preponderance.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  A finding of no substantial evidence is appropriate only if no

credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. Conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

Disability insurance is governed by Title II, 42 U.S.C. §§ 404 *et. seq.*, and SSI benefits are governed by Title XVI, 24 U.S.C. §§ 1381 *et. seq.*, of the Social Security Administration. The law and regulations governing the determination of disability are the same for both DIB and SSI. *Greenspan*, 38. F.3d at 236. The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff raises two points of error, that (1) the ALJ erred by not ordering a consultative examination to supplement the record; and (2) the ALJ's RFC determination is not supported by substantial evidence.

### *Consultative Examination Not Required*

Plaintiff argues that his eleven-month treatment gap and the "progressive nature" of his condition necessitated that the ALJ order a consultative examination to resolve the issue of disability [Dkt. 20 at 9]. Plaintiff advances that he twice requested a CE, that rulings on CE requests are required, and that no ruling was made prior to issuance of the ALJ's decision,

necessitating a finding of no substantial evidence. The Commissioner rejoins that Plaintiff failed to show a CE was necessary for the ALJ's Determination [Dkt. 21 at 7].

As to Plaintiff's latter contention, that the ALJ's decision cannot be supported by substantial evidence when the ALJ has notice of a request for a CE and fails to make a ruling on the request, Plaintiff points to no authority supporting this assertion [Dkt. 20 at 9].[3] The legal standard, discussed more fully *infra*, is whether a CE is "necessary" to make an informed determination. *Gonzalez v. Barnhart*, 51 F. App'x 484 (5th Cir. 2002) (citing *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989)); *Goforth v. Comm'r,* No. 6:14CV591, 2016 WL 878323, at *2 (E.D. Tex. Mar. 8, 2016). A review of Plaintiff's two requests, a letter dated February 19, 2019 (before Hearing) and a letter dated May 3, 2019 (after Hearing) [TR 35, 260-62], reveal that little to no justification was provided as to why a CE was necessary. In the February 19 letter, counsel for Plaintiff requested a CE because Plaintiff "has not been able to seek medical treatment due to financial issues" [TR 260].[4] Plaintiff's Hearing testimony is inconsistent with this explanation [Dkt. 21 at 8]. And further, neither Plaintiff nor Plaintiff's representative raised the issue of needing a ruling on the CE request at Hearing or indicated in response to questioning by the ALJ that the record needed to be supplemented with additional evidence. Moreover, Plaintiff took a

---

[3] Plaintiff cites to HALLEX policies as an alternative source for the duty to order a CE [Dkt. 20 at 6]. HALLEX I-2-5-20 does not require the ALJ to order a CE; it merely says "the ALJ may request a CE(s) and/or test(s) through the State agency." HALLEX I-2-5-20, 1992 WL 601808, at *1. The policy includes the caveat: "NOTE: An ALJ should request only the specific examination(s) or test(s) that he or she needs to make a decision." *Id.* "Although Social Security administrative hearings must follow the policies set forth in HALLEX, it is well-established that 'HALLEX does not carry the authority of law,' and the ALJ's error warrants remand only if Plaintiff was prejudiced by the error." *Martinez v. Saul*, No. 3:19-CV-1904-B-BH, 2020 WL 5536814, at *14 (N.D. Tex. Aug. 31, 2020), *report and recommendation adopted sub nom. Martinez o/b/o Marquez v. Saul*, No. 3:19-CV-1904-B-BH, 2020 WL 5531485 (N.D. Tex. Sept. 15, 2020) (citing *Morgan v. Colvin*, 803 F.3d 773, 777 (5th Cir. 2015)).

[4] Plaintiff's representative provides no information to explain why this request was not made earlier, given Plaintiff requested a hearing on April 24, 2018, almost a year prior to the request for a CE pre-Hearing [TR 132]. The Commissioner sent Plaintiff a notice of Hearing on May 11, 2018, which directly states: "You are required to inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled. Your representative must help you inform us about or submit the evidence . . . We can help you get evidence. If you need help, contact our office . . . of your representative (if you appoint one) immediately" [TR 134]. Plaintiff's representative received this notice [TR 135].

MEMORANDUM OPINION AND ORDER – Page 9

directly contrary position in his April 3, 2019 memorandum where Plaintiff's representative argued that the record evidence sufficiently established that Plaintiff had a disability [TR 267-69]. Tellingly, Plaintiff also did not raise the issue before the Appeals Council [Dkt. 21 at 8].[5]

As to Plaintiff's further allegation that a CE was required by virtue of a treatment gap, coupled with the progressive nature of his condition, a claimant is required to prove to the Social Security Administration that he or she is disabled. 20 C.F.R. § 404.1512(a)(1). A claimant seeking a favorable disability determination has a duty to "submit all evidence . . . at each level of the administrative review process." *Id.* In turn, the ALJ is required to ensure that the record is "complete." *Id.* § 404.1512(b)(1). If the evidence provided by a claimant is either "inconsistent or insufficient," the ALJ has the discretion to ask for a consultative examination. 20 C.F.R. § 404.1520(b) (the ALJ "may ask [the claimant] to undergo a consultative examination."). "The decision to obtain a consultative examination is discretionary with the ALJ and such an exam must be ordered only when necessary to develop a full and fair record." *Goforth*, 2016 WL 878323, at *2 (citing *Anderson*, 887 F.2d at 634); *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987)). Stated differently, a CE at government expense is not required unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision. *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *8 (5th Cir. 2005); *see Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008) (citing *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)) (to determine whether the ALJ "fully and fairly developed the record, we ask whether the

---

[5] *See Winston ex rel. D.F. v. Astrue*, 341 F. App'x 995, 998 (5th Cir. 2009) (finding the ALJ determination was supported by substantial evidence when plaintiff's own testimony at the hearing suggested no further need to develop the record). "Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation." *Hernandez v. Kijakazi*, No. 5-20-CV-00389-RBF, 2021 WL 3046884, at *4 (W.D. Tex. July 19, 2021) (quoting *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008)) ("Although the record looks incomplete and the ALJ appears to have been on notice of that fact . . . . the [c]ourt is troubled by the affirmative representation by [plaintiff's] counsel at the administrative hearing that the record was complete.").

record contained sufficient evidence for [the ALJ] to make an informed decision. So long as such evidence exists, the ALJ need not have supplemented the record with additional evidence."). The regulations provide that the decision to order a CE is made on an individual case by case basis. 20 C.F.R. § 404.1519. Here, there is no evidence that a consultative examination was necessary for the ALJ to make a disability determination. Because the Court finds substantial evidence supports the RFC, it follows that the ALJ did not abuse his discretion in failing to order a consultative examination. *See Brown v. Saul*, No. 20-61195, 2021 WL 2324970, at *3 (5th Cir. June 7, 2021) (per curiam) (finding the ALJ had "sufficient information" to determine plaintiff had severe impairments that would limit plaintiff to sedentary jobs, including "clinical findings, [plaintiff's] testimony, the medical evidence, and the persuasiveness" of several medical opinions); *Robinson v. Barnhart*, 183 F. App'x 451, 455 (5th Cir. 2006) (finding no duty to order a consultative examination where the ALJ found the plaintiff's impairments were severe, but that she could still engage in past relevant work); *Sims v. Apfel*, 224 F.3d 380, 381 (5th Cir. 2000) (finding no duty to order a consultative examination where the record contained sufficient evidence to find that plaintiff had the impairment she alleged); *Reynolds v. Saul*, No. 3:20-cv-97-JMV, 2021 WL 2371343, at *2 (N.D. Miss. June 9, 2021) (finding conditions for ordering a CE not met where the evidence in the record showed consistent exam findings related to plaintiff's impairment); *Smith v. Berryhill*, No. CV H-18-2490, 2019 WL 3557586, at *9 (S.D. Tex. July 11, 2019), *report and recommendation adopted*, No. CV H-18-2490, 2019 WL 3548850 (S.D. Tex. Aug. 5, 2019) (same); *Reed v. Massanari*, 270 F.3d 838, 843 (9th Cir. 2001) (finding error where the ALJ refused to order a CE by a rheumatologist on the "premise that both rheumatologists recruited by the State agency are unable or unwilling to provide reliable opinions on matters of rheumatology").

Furthermore, even if the claimant could establish a failure in the record development, courts will not reverse an ALJ's decision "unless the claimant shows that he . . . was prejudiced by the ALJ's failure." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). To establish prejudice under these circumstances, "a claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'" *Id.* (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)); *Goforth*, 2016 WL 878323, at *2 (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)) (explaining that reversal for "failure to develop the record" is appropriate "only where the claimant shows prejudice"). The ALJ's Determination found Plaintiff's rheumatoid arthritis to be a severe impairment [TR 22-24]. Plaintiff offers only speculation that he was prejudiced by the ALJ's failure to order a consultative examination: "the very nature of his progressive, degenerative autoimmune conditions implies that damaging changes occur" [Dkt. 20 at 9].[6] "A mere allegation that additional beneficial evidence might have been gathered had the error not occurred is insufficient to meet this burden." *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012). Moreover, the records that are before the Court do not support Plaintiff's argument; for example, Dr. Anbarasu's March 9, 2018 examination of Plaintiff showed his condition was unchanged from the time of his initial exam on August 30, 2017, some eight months before [TR 24]. Plaintiff has failed to show he was prejudiced by the lack of a CE. *See Gonzalez*, 51 F. App'x at 484 (affirming where plaintiff failed to show that additional evidence would affect determination of her vocational abilities); *Garcia v. Colvin*, No. CV M-15-322, 2016 WL 3538358, at *7 (S.D. Tex. May 27, 2016), *report and recommendation adopted*, No. 7:15-CV-322, 2016 WL 3512238

---

[6] The ALJ may order a CE when "[t]here is an indication of a change in [Plaintiff's] condition that is likely to affect [his] ability to work, but the current severity of [his] impairment is not established." *See* 20 C.F.R. § 404.1519a(b)(4); *Gonzalez v. Barnhart*, 51 F. App'x 484, 484 (5th Cir. 2002) (per curiam) (finding no prejudice where plaintiff failed to show how additional evidence as to the severity of her impairment would change her vocational limitations).

(S.D. Tex. June 22, 2016) (refusing to remand where plaintiff's claim for prejudice was based on his subjective allegations that his symptoms had worsened).

***Substantial Evidence Supports the ALJ's Determination***

Generally, the RFC finding reflects a disability claimant's maximum remaining ability to perform work activities despite his or her medically determinable impairments. 20 C.F.R. § 404.1545(a); *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985); *see Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001); *Pavel v. Saul*, No. 1:19-CV-620-RP-AWA, 2020 WL 4364226, at *3 (W.D. Tex. July 30, 2020) (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)); *see also* 20 C.F.R. § 404.1546(c) (the final determination of residual function capacity is the responsibility of the ALJ). And so long as the ALJ's findings are supported by more than a scintilla of evidence in the entire record, the Court may not "reweigh the evidence in the record nor substitute its judgment for the Commissioner's[.]" *Harris*, 209 F.3d at 417. Thus, the inquiry "is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

The crux of Plaintiff's substantial evidence claim is that the ALJ erred because the RFC does not incorporate all the limitations, specifically those as to handling, fingering, or reaching recommended by Dr. Anbarasu, Plaintiff's treating physician. The Commissioner conversely argues that the ALJ properly declined to adopt the disputed limitations because they were not supported by the record and because the ALJ's RFC need not, as a matter of law, track the assessments made by medical experts [Dkt. 21 at 11].

Relevant to consideration of Plaintiff's points of error is the rule for assessing medical opinion evidence for claims—including Plaintiff's—filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.[7] The old rule required the ALJ to give a treating physician's opinion "controlling weight" in the absence of specific mitigating factors, and to "always give good reasons" in the determination for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2).[8] The new rule eliminates the "controlling weight" given to treating physicians. 20 C.F.R. § 404.1520c(a). And, it provides that the Commissioner will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from the claimant's medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(a), (c)(1)-(5). However, supportability and consistency are the most important factors. *See* 20 C.F.R. §§ 404.1520c(a), 404.1520(b)(2).

---

[7] In transitioning to the new rule, the administration noted, "[t]he current policies that focus upon weight, including the treating source rule, have resulted in reviewing courts focusing more on whether we sufficiently articulated the weight we gave opinions rather than on whether substantial evidence supports the Commissioner's final decision." *Webster v. Comm'r*, No. 3:19-cv-97-DAS, 2020 WL 760395, at *3 (N.D. Miss. Feb. 14, 2020). "In other words, the new rules are an attempt to eliminate confusion about a hierarchy of medical sources and instead focus on the persuasiveness of the evidence itself. Reviewing courts, therefore, will now look first and foremost simply to whether substantial evidence exists to support an ALJ's opinion and not whether one opinion was correctly weighted in relation to any other(s)." *Id.*

[8] Even under the old rule, treating source medical opinions did not hold "any special significance" on issues reserved to the Commissioner, such statements by a medical source that a claimant is "unable to work." *See* 20 C.F.R. § 404.1527(d).

MEMORANDUM OPINION AND ORDER – Page 14

> By way of reminder, the ALJ found Plaintiff had the RFC to:
>
> [L]ift and carry 20 pounds occasionally and 10 pounds frequently, as well as stand and walk 2-hours out of an 8-hour workday and sit 6-hours out of an 8-hour workday. The claimant can stoop, bend, squat, kneel and crouch on an occasional basis. The claimant should not climb, use ropes, ladders, or scaffolds. The claimant must avoid extremes of heat and cold. He must also avoid vibration. The claimant requires a cane to get to and from the work zone.

[TR 24]. Dr. Anbarasu found, utilizing a check the box assessment, that Plaintiff had the following limitations, in relevant part: lift and carry less than 10 pounds frequently, and 20 pounds rarely; never twist stop, crouch, climb ladders or stairs; significant limitations in repetitive reaching, handling, and fingering; sit for only 30 minutes; stand for only 10 minutes; no need to elevate legs when sitting; and under 20% of time with gross manipulation, fine manipulation, and reaching [TR 317-26]. The ALJ's decision evaluated the persuasiveness of Dr. Anabrasu's recommended limitations in detail, explaining:

> Treating physician, Rani Anbarasu, M.D., completed an Arthritis Residual Functional Capacity Questionnaire on October 12, 2017. Dr. Anbarasu noted that he has seen the claimant monthly for five months. He noted a diagnosis of atihralgia with prognosis for rheumatoid arthritis. The claimant reported a history of constant joint pain all over the body, with a pain level of 8 out of 10. Dr. Anbarasu noted symptoms of reduced range of motion in the hands and back, joint warmth, reduced grip strength, impaired sleep, weight change, tenderness, crepitus, redness, swelling, muscle spasm, and muscle ,weakness. He noted that the claimant's pain interfered with attention and concentration. Dr. Anbarasu found the claimant incapable of even low stress jobs due to pain. Side effects of medication included slow movement and drowsiness. Dr. Anbarasu found the claimant could sit, stand and walk less than 2 hours each out of an 8-hour workday. He limited the claimant to sitting 30 minutes at one time and standing/walking 10 minutes at one time. He limited the claimant to occasionally lifting and carrying 10 pounds on an occasional basis. He found the claimant could never twist, stoop, crouch, climb ladders, or climb stairs. Dr. Anbarasu found the claimant would miss more than four days from work each month (Exhibit 3F).
>
> I find Dr. Anbarasu's residual functional capacity partially persuasive. However, the essentially normal physical examinations do not justify the extreme limitations found by Dr. Anbarasu. Examinations show evident degenerative joint disease and age related changes. Dr. Anbarasu observed the claimant to wear a knee brace and to use a cane for issues with balance. Examination also has revealed bilateral

> sacroiliac joint tenderness. However, the claimant has no cranial nerve deficits and normal range of motion with pain in the left knee.

[TR 27]. The ALJ also thoroughly reviewed the two SAMC reports, which found Plaintiff did not have any manipulative, visual, communicative, and environmental limitations [TR 69], stating:

> State Agency medical consultant, Cynthia Linardos, M.D., found on January 8, 2018 that the claimant could perform work at the light exertional level with occasional climbing of ramps/stairs, crouching (bending at the knees), and crawling. Dr. Linardos found the claimant could frequently balance and stoop (bend at the waist). Dr. Linardos further found the claimant could never climb ropes, ladders, or scaffolds. Dr. Linardos noted that postural limitations were justified by the claimant diagnoses of rheumatoid arthritis and left knee joint effusion (Exhibits lA and 2A). State Agency medical consultant, Betty Santiago, M.D., affirmed Dr. Linardos's residual functional capacity on April 10, 2018 (Exhibits 5 A and 6A).
>
> I also find the State Agency medical consultants' residual functional capacity partially persuasive. However, I find the medical evidence supports a more limited residual functional capacity for a reduced range of sedentary exertion. The claimant has rheumatoid arthritis involving the right wrist, with positive rheumatoid factor. The doctor diagnosed arthritis of unspecified joints and rheumatoid arthritis involving the right wrist.
>
> After careful consideration of the medical opinions of record, I find that the claimant's medically determinable impairments cannot reasonably be expected to produce the symptoms to the degree alleged by the claimant. The claimant's statements concerning the intensity, persistence and limiting effects of these symptoms have been determined to diminish the capacity for basic work activities only to the extent to which they can reasonably be accepted as consistent with the objective medical and other evidence. 20 CFR §1529(c)(4).

[TR 26-27]. The ALJ considered the evidence in the record and made a finding that differed from the functional limitations suggested by Dr. Anbarasu. This is not error; the ALJ is not required to incorporate limitations in the RFC that he or she did not find to be supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."); *Kozlowski v. Colvin*, No. 4:13-cv-020-A, 2014 WL 948653, at *7 (N.D. Tex. Mar. 11, 2014). Here, the RFC reflects a careful balancing of the opinions of both Dr.

Anbarasu and the SAMCs. *See Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) (rejecting the "argument that because the record was devoid of a residual function capacity (RFC) assessment by a medical source, the ALJ was not competent to assess her RFC"); *Fleming v. Saul*, No. SA-19-CV-00701-ESC, 2020 WL 4601669, at *7 (W.D. Tex. Aug. 10, 2020) ("Although the ALJ did not adopt in its entirety any one medical opinion of record in fashioning his RFC, he also did not completely reject every opinion either. Instead, the ALJ properly evaluated all of the medical opinions in the record (none of which arose out of a treatment relationship) in accordance with the Section 404.1520c's more flexible methodology for analyzing opinion evidence and exercised his discretion to resolve conflicts in the evidence to assess the RFC based on all the relevant evidence in the record.") (citing *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012)). Moreover, the ALJ specifically acknowledged Plaintiff's diagnosis of wrist arthritis in the decision. And while Plaintiff cites to records from Dr. Anbarasu showing diagnosis of wrist arthritis with limited range of motion in support of his position [Dkt. 20 at 11], the ALJ expressly considered these same records in the body of the decision.

To reiterate, the ALJ found the manipulative check box limitations found by Dr. Anbarasu to be unpersuasive [Dkt. 21 at 10]. Neither SAMC determined that Plaintiff required any manipulative limitations [TR 69, 90]. *See Dixon v. Comm'r*, No. 4:18-CV-634, 2019 WL 5875901, at *1 (E.D. Tex. Sept. 27, 2019) (explaining there has never been a requirement in the Fifth Circuit that an RFC precisely match an expert medical opinion). "The ALJ is not confined to picking one opinion and adopting it." *D.J.M. v. Berryhill*, No. 18-cv-0193, 2019 WL 1601491, at *4 (W.D. La. 2019). "Like a trial judge or jury, the ALJ may weigh the competing opinions, take into consideration all of the other evidence of record, and make a finding that may not be exactly the same as the opinion of any one medical source." *Id.* "The ALJ is 'not required to

accept any medical evidence *in toto*, rather, [the ALJ's] RFC determination is based upon the evidence as a whole.'" *Robinson v. Colvin*, No. 4:14-CV-787-O-BL, 2016 WL 446620, at *3 (N.D. Tex. Jan. 6, 2016) (emphasis in original), *report and recommendation adopted*, No. 4:14-CV-787-O-BL, 2016 WL 427484 (N.D. Tex. Feb. 4, 2016) (citing *Gray v. Astrue*, No. 1:09-CV-0101-BI, 2011 WL 856941, at *6 (N.D. Tex. Mar. 11, 2011)). Plaintiff also does not explain how this alleged error, even if true, prejudiced him. He does not allege that, had the RFC included some form of manipulative limitation, the finding at step five would have changed.[9] Substantial evidence supports the ALJ's determination.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's Decision should be **AFFIRMED**.

SIGNED this 13th day of August, 2021.

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE

---

[9] The Court does not find persuasive Plaintiff's argument that "[t]estimony relating to leg elevation and development of the record relating to case usage is required" [Dkt. 20 at 11]. Here, again, Plaintiff ignores the on-point explanation regarding Plaintiff's lower extremities in the RFC assessment, which states: "Dr. Anbarasu observed the claimant to wear a knee brace and to use a cane for issues with balance. Examination also has revealed bilateral sacroiliac joint tenderness. However, the claimant has no cranial nerve deficits and normal range of motion with pain in the left knee" [TR 27]. Plaintiff does not explain or even reference that a contrary finding is possible at step five had the ALJ make additional findings about lower extremity limitations, only vaguely argues that prejudice resulted from failure to develop the record. At Hearing, the ALJ asked Plaintiff about his knee pain, and whether he wore a knee brace, to which Plaintiff replied that he did not [TR 53]. The Court finds this bare allegation insufficient to allege prejudice and reversible error for the reasons explained herein regarding the duty to order a CE. *See Brown*, 2021 WL 2324970, at *3 (finding no error where the record contained sufficient information to determine plaintiff had impairments that would limit plaintiff to sedentary jobs).